UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANETTE ANDREA-BROOKE
BARTH,

                 Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                 Defendant.

_____/

Case No. 20-13147

Mark A. Goldsmith
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 18, 21)

Plaintiff Danette Barth brings this action pursuant to 42 U.S.C. § 405(g),

challenging the final decision of Defendant Commissioner of Social Security

("Commissioner") denying her applications for child's insurance benefits and

supplemental security income under the Social Security Act (the "Act").  This

matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (ECF No. 18), the

Commissioner's cross-motion for summary judgment (ECF No. 21), and the

administrative record (ECF No. 16).

For the reasons stated below, it is **RECOMMENDED** that the Court **DENY**

Plaintiff's motion for summary judgment (ECF No. 18), **GRANT** Defendant's

motion for summary judgment (ECF No. 21), and **AFFIRM** the Commissioner's decision.

## I.   DISCUSSION

### A.   Background and Administrative History

Plaintiff previously filed an application for supplemental security income on June 18, 2015, alleging disability beginning on January 1, 2002.  (ECF No. 16, PageID.70).  She received an unfavorable determination.  The Administrative Law Judge ("ALJ") on the current application considered the res judicata effect of that prior ruling, which is addressed below.

In the application now before the Court, Plaintiff alleges her disability began on September 1, 2000, before she attained age 22. (ECF No. 16, PageID.66, 70). On July 26, 2018, she applied for child's insurance benefits and for supplemental security income.  In her disability report, she listed ailments which diminished her ability to work.  The ailments included: anxiety, depression, panic disorder, bipolar disorder, "OSD," "ADD," "ADHD," and hearing loss.  (*Id*. at PageID.297).  Her application was denied on October 31, 2018.  (*Id.* at PageID.66).

Following the denial, Plaintiff requested a hearing by an ALJ.  On August 28, 2019, ALJ Virginia Herring held a hearing, at which Plaintiff and a vocational expert ("VE"), James Fuller, testified.  (*Id.* at PageID.85-105).  Plaintiff was represented by a non-attorney representative.  On March 17, 2020, the ALJ issued

an opinion which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at PageID.66-79).  Plaintiff later submitted a request for review of the hearing decision.  On October 6, 2020, the Appeals Council denied Plaintiff's request for review.  (*Id.* at PageID.52-56).  Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on November 30, 2020.

**B.    The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2000, the alleged onset date.  (ECF No. 16, PageID.70).  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: hearing loss, lumbago, mild obstructive sleep apnea, obesity, benign positional vertigo, and mental health impairments various characterized as depression, anxiety, obsessive compulsive disorder, panic disorder, and attention deficit hyperactivity disorder.  (*Id.*).  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id.* at PageID.70-71).  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant

to perform medium work . . . except:

• claimant may never climb ladders, ropes, or scaffolds;

• claimant must avoid all hazards such as dangerous machinery and unprotected heights;

• claimant is limited to simple and routine tasks in making simple work-related decisions, in an environment with only occasional changes in the work setting or general nature of tasks performed;

• only occasional verbal instructions are permitted;

• claimant is limited to occasional contact with the public, coworkers and supervisors.

(*Id.* at PageID.71).  At **Step 4**, the ALJ determined that Plaintiff has no past relevant work.  (*Id.* at PageID.77).  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were existing jobs in significant numbers within the national economy that Plaintiff could perform, such as dishwasher, laundry worker, and cleaner.  (*Id.* at PageID.78).  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since September 1, 2000, the alleged onset date. (*Id.* at PageID.79-80).

### C.    Framework for Disability Determinations

---

can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[2]  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

### D.    Standard of Review

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Even so, "if substantial evidence supports the ALJ's decision, this Court

defers to that finding 'even if there is substantial evidence in the record that would

have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581

F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

> ## E.     Analysis
>
> ### 1.     ALJ's Failure to Reopen the Prior Claim

Plaintiff argues the ALJ committed error when she denied Plaintiff's request

to reopen her prior claim.  Plaintiff asserts her treating psychologist's opinion,

which is discussed at length below, provides good cause to reopen the claim.  (ECF

No. 18, PageID.767-68).

As the Commissioner notes, the ALJ's decision not to reopen the prior

application is not reviewable by this Court.  20 C.F.R. § 404.903(l) provides that

"[a]dministrative actions that are not initial determinations . . . are not subject to

judicial review[, including] denying your request to reopen a determination or a

decision."  The Supreme Court has said that 42 U.S.C. § 205(g) "cannot be read to authorize judicial review of alleged abuses of agency discretion in refusing to reopen claims for social security benefits."  *Califano v. Sanders*, 430 U.S. 99, 107-08 (1977); *see also Glazer v. Comm'r of Soc. Sec.*, 92 F. App'x 312, 314 (6th Cir. 2004) (Section 405(g) "restricts judicial review to a final decision of the Commissioner made after a hearing.  A petition to reopen a prior final decision may be denied by the Commissioner without a hearing."  Thus, a decision not to reopen is not reviewable.) (citing *Califano*, 430 U.S. at 108-09)).

The only exception is when the plaintiff establishes a colorable constitutional claim.  *Califano*, 430 U.S. at 109.  Plaintiff did not assert a colorable constitutional claim.  As a result, her argument about the ALJ's decision not to reopen her prior claim is not subject to judicial review and does not provide grounds to reverse the ALJ's decision.  *See, e.g.*, *Mounts v. Berryhill*, 2020 WL 34407, at *7 (E.D. Ky. Jan. 2, 2020).

2.    Dr. Baddigam's Medical Source Statement

The record contains treatment notes from Dr. Baddigam from December 2015 through May 2019 for mental impairments.  On December 1, 2017, he completed a mental medical source statement covering the period from June 2015 through September 2017.  He opined Plaintiff was either not significantly limited or only moderately limited in understanding and memory, sustained concentration

and persistence, social interaction, and adaptation.  (ECF No. 16, PageID.369-71).

The ALJ found this opinion persuasive, explaining that it is supported by and

consistent with the objective and other evidence in the record.  (*Id.* at PageID.77).

Plaintiff contends that the ALJ incorporated no specific or appropriate

limitations from the opinion into the RFC.  She points specifically to Dr.

Baddigam's opinion that she is moderately limited in her ability to complete a

normal workday and workweek without interruptions from her symptoms, to

perform at a consistent pace without an unreasonable number of rest periods, and

to set realistic goals or make plans independently of others.  She insists the RFC

limitation to simple, routine tasks and simple work-related decisions does not

incorporate Dr. Baddigam's limitations.  (ECF No. 18, PageID.766-67).

The Commissioner argues the ALJ properly weighed the opinion.  She

contends the RFC limitations to simple routine tasks, simple decisions, occasional

workplace changes, and occasional contact with others sufficiently account for Dr.

Baddigam's opinions, and that other courts have upheld similar limitations to

account for a moderate limitation in completing a normal workday or workweek.

The Commissioner also argues that while the vocational expert testified that being

off task more than ten percent of the day would preclude work, Plaintiff has not

pointed to any evidence that she would be off task more than ten percent of the

day.  (ECF No. 21, PageID.794-96).

In the view of the undersigned, there is no reversible error in the ALJ's treatment of Dr. Baddigam's opinion or the limitations set forth in the RFC. Plaintiff has not shown how moderate limitations in her ability to complete a normal workday, perform at a consistent pace, or set realistic goals conflicts with the RFC, which implicitly includes the finding that Plaintiff can perform work on a regular and continuing basis.  SSR 96-9p, 1996 WL 374185, at *2 (July 2, 1996). Plaintiff points to the vocational expert's testimony that being off task more than 10% of the day is work preclusive in support of her argument, but she has not pointed to any evidence that she would be off task more than 10% of the day. Plaintiff did not provide authority suggesting Dr. Baddigam's moderate limitation in the ability to complete a normal workday without unreasonable rest periods equates to being off task more than 10%.  Plaintiff carries the burden of proving she is disabled.

The Commissioner cites unpublished cases from this District stating or implying that moderate limitations discussed above align with RFC limitations to simple routine work with few workplace changes.  (ECF No. 21, PageID.794). Plaintiff did not come forward with contrary authority.

Moreover, reading Dr. Baddigam's opinion as a whole, the RFC accounts for his opinions.  For instance, he opined Plaintiff's ability to "carry out very short and simple instructions" was not significantly limited, but that her ability to "carry

out detailed instructions" is moderately limited.  The ALJ limited Plaintiff to simple, routine work.  Dr. Baddigam also found Plaintiff not significantly limited in her ability to perform activities within a schedule, maintain regular attendance, and to sustain an ordinary routine without special supervision.  (ECF No. 16, PageID.369).  This opinion is consistent with the finding that Plaintiff can perform work on a regular and continuing basis.  And, again, Plaintiff has not supported her position that a moderate limitation in the ability to work without unreasonable rest periods is at odds with the RFC.

### 3.    Pseudodementia Diagnosis

Plaintiff argues that the ALJ violated 20 C.F.R. §§ 404.944 and 404.1520(c) when she failed to consider Plaintiff's diagnosis of "very severe pseudodementia from anxiety and depression."  (ECF No. 18, PageID.768).  She says the diagnosis resulted from testing the ALJ did not discuss and which demonstrate limitations in excess of the RFC.

Plaintiff underwent cognitive testing with Dr. Varma during October 2018.  Testing revealed below average cognitive quotient, normal verbal functions, a depression score of 13/15, and an anxiety score of 67/80.  Dr. Varma stated that these findings "indicate a very severe pseudodementia from anxiety and depression."  (ECF No. 16, PageID.413).  In later treatment records, Dr. Varma

listed pseudodementia among Plaintiff's diagnoses.  (*See, e.g.*, ECF No. 16, PageID.704, 712, 716, 720, 728, 735).

The ALJ did not mention these test results or the pseudodementia diagnosis in her decision.  The Commissioner made two points here which are well taken.  First, the ALJ need not discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  Although the ALJ did not discuss the testing or diagnosis, the ALJ cited records from Dr. Varma's progress notes dated between May 2018 and August 2019, which included pseudodementia among the listed diagnoses.  (ECF No. 16, PageID.74).  Thus, the undersigned concludes that, although she did not expressly discuss the diagnosis, she reviewed records containing the diagnosis.  What is more, Dr. Varma suggested the pseudodementia is "from" Plaintiff's depression and anxiety.  The ALJ expressly considered depression and anxiety.  Plaintiff did not challenge that consideration.  In all, the undersigned cannot conclude that the ALJ reversibly erred by failing to discuss this particular diagnosis.

Second, "disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."  *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x

547, 551 (6th Cir. 2014). Neither Dr. Varma nor another of Plaintiff's doctors discussed or suggested functional limitations resulting from the diagnosis. *See Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) ("The mere fact that plaintiff suffered from a dysthymic disorder . . . does not automatically entitle plaintiff to the receipt of benefits. Rather, in order to qualify for the receipt of benefits . . . plaintiff must show that she was disabled by her dysthymic disorder."). Plaintiff herself did not suggest what functional limitations result from the diagnosis. The ALJ is not in a position to "play doctor" and extrapolate functional limitations from raw medical data or diagnoses alone. The undersigned finds no reversible error here.

Plaintiff's undeveloped contention that the ALJ violated 20 C.F.R. § 404.944 should be deemed waived. That section provides for administrative law judge hearing procedures. Plaintiff did not develop an argument about the administrative hearing. *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004) ("We have cautioned that [i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived, and that [i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones") (citations and punctuation omitted).

        4.     Benign Positional Vertigo

Plaintiff contends it is not clear whether the ALJ incorporated limitations in the RFC to account for her benign positional vertigo.  She insists the exclusion of climbing ropes, ladders, or scaffolds and avoiding dangerous machinery and unprotected heights in the RFC does not account for the impairment because the ALJ stated these limitations were for other impairments.  (ECF No. 18, PageID.768-69).

In response, the Commissioner argues the ALJ expressly considered vertigo along with the other impairments and stated that Plaintiff's vertigo was among the reasons for the limitations listed above.  The Commissioner next argues that Plaintiff did not meet her burden of showing what additional limitations should have been included in the RFC.  (ECF No. 21, PageID.799-800).

Plaintiff's statement of error lacks merit.  The ALJ expressly accounted for her vertigo in the RFC.  The ALJ stated,

> The claimant has been treated for vertigo and seizure disorders.  Testing has consistently been negative for an[y] evidence of ongoing  seizures.  The claimant's vertigo is treated with medication.  Finally, the claimant has also been diagnosed with sleep apnea.  She has complained of feeling tired while awake.  However, she is able to go grocery shopping, clean up around the house, watch television, attend her daughter's school activities, and spend time with friends.  **For these reasons**, the undersigned further finds the claimant may never climb ladders, ropes, or scaffolds; she must avoid all hazards such as dangerous machinery and unprotected heights.

(ECF No. 16, PageID.75) (emphasis added).  In other words, to account for

Plaintiff's vertigo, seizures, and sleep apnea, the ALJ limited her to never climbing

ropes, ladders, or scaffolds and avoiding all hazards.  Thus, Plaintiff's contention

that it is not clear whether the ALJ accounted for vertigo lacks merit.  And as the

Commissioner points out, Plaintiff did not suggest what other limitations,

supported by record evidence, the ALJ should have included to account

specifically for vertigo that were not already included in the RFC.

       5.     Assessment of Opinion Evidence

Plaintiff challenges the weight given to the non-treating State agency

physician's opinions.

Plaintiff presented to State agency psychologist Dr. Solomon during October

2018 for a mental status examination.  Dr. Solomon concluded that Plaintiff's

problems with ADHD and anxiety were managed with medication.  She was

independent with activities of daily living.  She did not evidence limitations with

"short term working memory or concentration that would interfere with her ability

to follow at least team work related activities and two or three step directions at a

sustained pace."  (ECF No. 16, PageID.416-17).

Dr. Tripp, a State agency psychological non-examining consultant, provided

an opinion on October 26, 2018.  He assessed Plaintiff's functioning in the "b"

criteria for listings 12.04, 12.05, 12.06, and 12.11.[3]  He reviewed the medical

evidence available to him, except Dr. Baddigam's medical source statement

discussed above.  (ECF No. 16, PageID.149-50).  Dr. Tripp concluded, based on

his review of the evidence, that Plaintiff had mild limitation in her ability to

understand, remember, or apply information; interact with others, and adapt and

manage herself.  He concluded she had moderate limitation in her ability to

concentrate, persist, or maintain pace.  (ECF No. 16, PageID.155).

On September 18, 2018, Dr. Flake provided a consultative opinion on

Plaintiff's physical functioning after reviewing the record evidence.  He also did

not review Dr. Baddigam's mental medical source statement.  Dr. Flake concluded

that, since there was no new and material evidence on physical impairments since

the prior ALJ's decision, the prior physical RFC should be adopted.  (*Id.* at

PageID.158).

Plaintiff argues the ALJ gave too much weight to these physicians' opinions

over her treating physician's opinion.  She asserts that Dr. Solomon's findings that

she was able to perform more than simple work are inconsistent with Dr.

Baddigam's opinion.  She contends Drs. Tripp and Flake's opinions shouldn't have

---

[3] The paragraph B criteria are (1) understanding, remembering, or applying information;
(2) interacting with others; (3) concentrating, persisting, or maintain pace; and (4) adapting or
managing oneself.

been given weight because they did not consider Dr. Baddigam's opinion and their opinions conflict with Dr. Baddigam's opinion.

In review, the ALJ will assess the persuasiveness of both treating and non-treating medical evaluations based on how well they are supported by the rest of the record.[4] 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"). The factors an ALJ must consider in evaluating medical opinions include supportability and consistency with the record as a whole; relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose and extent of the treating relationship; whether the source has examined the claimant; specialization; and any other factors that support or undermine the medical opinion. §§ 404.1520c(c), 416.920c(c). ALJs must articulate the "most important factors of supportability and consistency" of the medical opinions but "are not required to . . . explain" the consideration given to the remaining factors. §§ 404.1520c(a-b); 416.920c(a-b).

---

[4] Plaintiff's argument that the non-treating source opinions should not have been given more weight than her treating source's opinion appears to be a nod to the old "treating physician rule." Since Plaintiff filed her disability application after March 27, 2017, the ALJ was not required to give a treating physician's opinion controlling or give good reasons not to, but  was needed to assess the persuasiveness of all medical opinions.

Plaintiff's contention that the ALJ erred by giving the agency physicians' opinions more weight than her treating physician's opinion, by itself, is not error. *See Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) ("Certainly, the ALJ's decision to accord greater weight to state agency physicians over Blakley's treating sources was not, by itself, reversible error.").  And the mere fact that there may be some inconsistency between the State agency opinions and Dr. Battigam's opinion is not cause for a remand because, again, the ALJ need not adopt a treating physician's opinion.  And to the extent there is inconsistency between the opinions, the ALJ ultimately adopted Dr. Baddigam's moderate limitations opinions at Step Three (ECF No. 16, PageID.70-71) and, as discussed above, the RFC accounts for Dr. Baddigam's opinion.

In any event, the ALJ assessed the opinions in accordance with the regulations.  She explained that Dr. Solomon's opinion was persuasive because it aligned with the other evidence: largely unremarkable mental status examinations, ability to engage in daily activities and social activities, and depression, anxiety, and difficulty getting along with others outside the therapist's office.  (ECF No. 16, PageID.76).  She likewise found Drs. Tripp and Flake's opinions consistent with the record, although she noted more mental health records were submitted after Dr. Tripp's opinions that reflected ongoing treatment.  Those records, however, did not

give the ALJ reason to assess a more limited RFC.  (*Id.*).  In short, the ALJ

assessed the "most important factors" as she was required to do.

Plaintiff faults the ALJ for crediting the opinions of doctors who may not

have considered Dr. Baddigam's opinion.  This alone is not error.  The ALJ may

rely on a state agency physician's opinion that is not based on all of the medical

evidence in the record if the ALJ takes into account any evidence that the

physician did not consider.[5]  *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x

26, 32 (6th Cir. 2009).  Here, the ALJ expressly considered Dr. Baddigam's

opinion, found it persuasive, and adopted the "moderate limitation" findings

therein.

6.      Consideration of Plaintiff's Daily Activities

Plaintiff's last statement of error reads, in full,

> Lastly, no reasonable mind would find any inconsistency
> between plaintiff's subjective mental health complaints
> and the minimal activities cited by the ALJ, especially
> when the whole of Plaintiff's testimony is taken into
> account.  Plaintiff does not claim to be completely
> incapacitated, and the few activities cited by the ALJ are
> not inconsistent with Plaintiff's subjective complaints.

(ECF No. 18, PageID.169-70).  The undersigned would characterize this

"argument" as perfunctory, leaving it for the Commissioner and the Court to

---

[5] It is seemingly inconsequential that Dr. Flake did not consider Dr. Baddigam's opinion. Dr. Flake assessed Plaintiff's physical functioning, while Dr. Baddigam offered an opinion on her mental functioning.  The latter would seem largely irrelevant to the former.

consider in the first instance whether the ALJ properly assessed Plaintiff's hearing testimony and allegations.  Nevertheless, since the Commissioner addressed the ALJ's treatment of Plaintiff's subjective complaint, the same will be addressed here.

Plaintiff testified that she cannot work because she cannot handle her emotions—she will have panic attacks every day, crying and yelling.  She does not drive because she is afraid of hurting someone and cannot keep herself on track or concentrate.  She testified she once spent three hours in a grocery store and only got half of the things she needed because she was overwhelmed and distracted. She said the only time she is comfortable and not close to tears is when she's sleeping.  (ECF No. 16, PageID.90-103).

Under SSR 16-3p, evaluating an individual's alleged symptoms entails a two-step process first deciding whether a claimant has an "underlying medically determinable physical  or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."  2016 WL 1119029, at *2-3 (Mar. 16, 2017).  The ALJ found the first step was satisfied because Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms."  (ECF No. 16, PageID.73).

After step one is satisfied, when considering the intensity, persistence, and limiting effects of an individual's symptoms, an ALJ should consider these seven

factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that  precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and, (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7-11.  While an ALJ need not explicitly address all these factors, the ALJ should sufficiently articulate specific reasons for the credibility determination so that the claimant and any subsequent reviewer can "trace the path of the ALJ's reasoning." *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005); *see also Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016) ("The ALJ was not required to explicitly discuss [claimant]'s work history when assessing his credibility. . . .").

The ALJ was required, and did, evaluate Plaintiff's daily activities as part of the assessment of her subjective complaints.  But the ALJ gave other reasons for finding the subjective complaints about mental functioning not entirely consistent with the medical and other evidence in the record.  The ALJ cited largely normal mental status examinations and stable symptoms with treatment.  (ECF No. 16,

PageID.73-74).  The ALJ also credited the opinion evidence which does not

establish that she is disabled.  In addition to that evidence, despite her depression,

anxiety, and difficulty getting along with others, the ALJ noted that Plaintiff

reported that she was able to go grocery shopping, clean the house, watch

television, attend her daughter's school activities, and spend time with friends.  (*Id.*

at PageID.75).  While Plaintiff testified that she could not work because of her

mental impairments, the ALJ supported her decision to discount that testimony

with the unremarkable status exams, reported activities, and reliance on opinion

evidence.  This constitutes substantial evidence in support of the ALJ's

conclusions.  The undersigned thus suggests affirming the ALJ's decision on

Plaintiff's subjective complaints.

### F.    Conclusion

Plaintiff has the burden of proof on her statements of error.  *Walters v.

Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff has not shown

legal error that would upend the ALJ's decision.  For all these reasons, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 18), **GRANT** Defendant's motion for summary judgment

(ECF No. 21), and **AFFIRM** the Commissioner of Social Security's decision.

## II.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 23, 2022                    <u>s/Curtis Ivy, Jr.</u>
                                        Curtis Ivy, Jr.
                                        United States Magistrate Judge